IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| ANGELA ROBESON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-3109-CV-S-ODS-SSA |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

ORDER AND OPINION AFFIRMING
COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income. The Commissioner's decision is affirmed.

I. BACKGROUND

Plaintiff was born on September 11, 1981, and has a high school education. R. 23. She has prior work experience as a sales assistant, home attendant, fast food worker, and a commercial cleaner. R. 51. Plaintiff contends she became disabled beginning June 18, 2009, due to complex regional pain syndrome, interstitial cystitis, irritable bowel syndrome, anxiety, bipolar disorder, and depression. R. 215.

A complete summary of Plaintiff's medical history is not necessary. The following will suffice for purposes of this appeal. Plaintiff began seeing her mental health therapist, Diane Bailey, MSW, on October 7, 2008. R. 333. Plaintiff reported symptoms of anxiety and depression. R. 334. In her initial evaluation, Ms. Bailey listed Plaintiff's prescribed medication, which included medication for anxiety. R. 335. Ms. Bailey assessed Plaintiff as having post-traumatic stress disorder. R. 334-35. Plaintiff reported doing better when she saw Ms. Bailey on October 22, 2008. R. 336. A week

later, Ms. Bailey reported Plaintiff was processing well and seemed happier. R. 337. On November 7, 2008, Plaintiff appeared "much happier" than her first appointment and was doing well. R. 338. On December 10, 2008, Plaintiff was doing better with medication. R. 339. Treatment notes from February 4, 2009, and June 24, 2009, also indicate Plaintiff was making good progress and doing better. R. 341, 345.

On December 3, 2009, Ms. Bailey completed a medical source statement-mental. She opined that Plaintiff was markedly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. R. 348. She also opined that Plaintiff was moderately limited in the ability to: sustain an ordinary routine without special supervision; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. R. 349.

Treatment notes from Nixa Internal Medicine on August 24, 2009, indicate that Plaintiff was doing better and she thought her bipolar disorder and depression was "very well controlled." R. 299. On September 23, 2009, Plaintiff said her depression and bipolar disorder was stable and her medications were working well. R. 308. On January 16, 2010, Plaintiff reported her bipolar disorder and anxiety was more stable and that her therapy was helping "tremendously." R. 390. She also indicated she wanted to stop taking Xanax because she did not think she needed it anymore for her anxiety. R. 390. On March 19, 2010, Plaintiff reported that her depression was better and her anxiety was stable. R. 497. An examination revealed that Plaintiff had normal mood, affect, judgment, and thought content. R. 497. On April 19, 2010, Plaintiff's mood was stable and she did not have any difficulties with her depression. R. 504.

On September 7, 2011, Plaintiff was referred to a clinical psychologist, Brooke L. Whisenhunt, Ph.D., for a Clinical Psychological assessment and report. Dr. Whisenhunt opined that Plaintiff was able to: understand and remember moderately complex instructions; sustain concentration and persistence on easy tasks; interact in at least moderately demanding social situations; and adapt to her personal environment. R. 562.

Dr. Whisenhunt completed a medical source statement-mental on September 17, 2011. She opined Plaintiff had mild limitations in the ability to understand and remember complex instructions, carry out complex instructions, and the ability to make judgments on complex work-related decisions. R. 564. She also opined that Plaintiff had no limitation in the ability to understand and remember simple instructions, carry out simple instructions, and the ability to make judgments on simple work-related decisions. R. 564.

An administrative hearing was held on August 10, 2011. Plaintiff testified it was difficult for her to concentrate and get along with people. R. 43. The vocational expert ("VE") testified that a hypothetical claimant with Plaintiff's age, education, work experience, and residual functional capacity ("RFC") could work as a housekeeper or production assembler. R. 55-54.

The administrative law judge ("ALJ") rendered his decision on February 13, 2012. R. 25. At step one of the five-step sequential process, the ALJ determined Plaintiff had not engaged in substantial gainful activity since June 18, 2009, the alleged onset date. R. 15. At step two, the ALJ found Plaintiff had the following severe impairments: chronic pelvic pain syndrome secondary to chronic interstitial cystitis; endometriosis; obesity; pain disorder with psychological factors and a general medical condition with somatization; personality disorder; anxiety; post-traumatic stress disorder; depression; bipolar disorder; and opiate dependence (20 CFR 404.1520(c) and 416.920(c)). R. 16. At step three, the ALJ determined Plaintiff did not have a listed impairment. R. 16. For steps four and five, the ALJ concluded:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to lift and/or carry 10 pounds frequently and 20 pounds occasionally. She is able to stand and/or walk (with normal breaks) for about six hours in an 8-hour workday. She is able to sit (with normal breaks) for a total of about six hours in an 8-hour workday. She is able to frequently balance and climb ramps or stairs. She can occasionally climb ladders, ropes or scaffolds. She can occasionally stoop, kneel, crouch or crawl. She is not able to cope with high stress, such that she would not be able to work in a job requiring fast-paced activity or requiring the meeting of strict or explicit quotas, deadlines or schedules. She cannot adjust to unusual changes in a work setting. She is not able to sustain a high level of concentration such as sustained precision or sustained attention to detail. She is able to

> sustain a simple routine or simple repetitive task. She is not able to
> engage in personal interaction with the public. She cannot engage in
> close personal interaction with coworkers.

R. 17. Next, the ALJ found, based on the VE's testimony, that Plaintiff was unable to perform any past relevant work, but considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, including housekeeper and productions assembler. R. 24. Finally, the ALJ concluded Plaintiff was not disabled. R. 24-25.

## II. STANDARD

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision "simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Substantial evidence is "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Gragg v. Astrue*, 615 F.3d 932, 938 (8th Cir. 2010).

## III. DISCUSSION

### A. RFC

Plaintiff argues the ALJ failed to provide an adequate link between the medical and nonmedical evidence and the RFC. Specifically, Plaintiff contends the evidence the ALJ relied upon with regard to Plaintiff's mental limitations was unclear.

An ALJ is not required to list every limitation along with a discussion of the evidence supporting it when determining Plaintiff's RFC. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Instead, the ALJ makes an RFC determination "based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *McKinney*,

4

228 F.3d at 863. In this case, the ALJ identified substantial medical evidence supporting his RFC determination. The ALJ specifically addressed Plaintiff's treatment history, the objective clinical findings, Plaintiff's subjective complaints, and all of the medical opinions and evidence of record before making a determination on Plaintiff's RFC. R. 17-23.

Plaintiff argues the mental RFC findings did not coincide with Dr. Whisenhunt's opinion. However, it is clear the ALJ based Plaintiff's mental RFC on Dr. Whisenhunt's opinion, Plaintiff's credible statements, and the treatment notes in the record. R.17-23. Dr. Whisenhunt opined that Plaintiff could sustain concentration and persistence on easy tasks. R. 562. Similarly, the ALJ stated that Plaintiff could not sustain a high level of concentration and restricted Plaintiff to simple routine or simple repetitive tasks. R. 17. Dr. Whisenhunt, Ms. Bailey, and Plaintiff all stated that Plaintiff had restrictions in social situations; the ALJ restricted Plaintiff's interaction with the public and coworkers. R. 17, 22, 43, 348-39, 562.

Next, Plaintiff contends the ALJ should have given more weight to her former therapist, Ms. Bailey. Ms. Bailey opined that Plaintiff was marked limited at performing activities within a schedule, maintaining regular attendance, being punctual, and completing a normal workday without interruption. R. 348-49. The ALJ properly pointed out that Ms. Bailey's opinion is considered as an "other source" and may be used to show the severity of impairments and how the ability to work is affected. R. 22 (citing 20 CFR 404.1513; 416.913); *see also Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006). "In determining what weight to give to 'other medical evidence,' the ALJ has more discretion and is permitted to consider any inconsistences found within the record." *Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir. 2005).

Here, the ALJ properly assigned little weight to Ms. Bailey's opinion. First, Ms. Bailey did not cite to any medical evidence to support her findings that Plaintiff suffered from marked limitations. Second, Ms. Bailey's own treatment notes conflict with her opinion—Ms. Bailey reported that Plaintiff was happier, making good progress, and her mental impairments were well controlled. R. 337-41, 345. Finally, the medical treatment records show that Plaintiff's mental impairments were well controlled. R. 299,

308, 390, 497, 504. The Court concludes there is substantial evidence in the record to support the ALJ's RFC determination.

C. Testimony of the Vocational Expert

As previously discussed, at the administrative hearing, the VE testified that a hypothetical claimant with Plaintiff's age, education, work experience, and RFC could work as a housekeeper or production assembler. Plaintiff contends the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT").

First, Plaintiff argues the DOT definition of cleaner/housekeeper requires her to render personal assistance to patrons, which she contends, conflicts with the RFC restriction prohibiting personal interaction with the public. The Court rejects Plaintiff's argument. The DOT is not a list of job requirements and should not be treated as such. *E.g.*, *Moore v. Astrue*, 623 F.3d 599, 604-05 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007)). As Defendant points out, and the Court agrees, there can be a subset of housekeeping jobs that require no personal assistance to patrons. *See Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000) ("[N]ot all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT.").

Next, Plaintiff takes issue with the production assembler's position requirement of performing repetitive bench or line assembly operation to mass-produce products. Plaintiff contends this requirement includes strict deadlines or schedules, which conflicts with the RFC restricting Plaintiff from jobs requiring strict or explicit quotas, deadlines, or schedules. However, the DOT does not list such requirement. *See* U.S. Dep't of Labor, *DOT* (4th ed. 1991) § 706.687-010 (describing "assembler, production"). Plaintiff also contends that the DOT statement that an assembler "[m]ay be assigned to different work stations," necessarily means "unusual changes in a work setting," which was a restriction in the RFC. Furthermore, as Defendant points out, the DOT itself says "*may be assigned*," noting that the act is merely a possibility under the DOT definition. Further, once again, the DOT is not a list of job requirements and not all assembler jobs

6

have requirements identical to the DOT. *E.g.*, *Moore v. Astrue*, 623 F.3d 599, 604-05 (8th Cir. 2010) (quoting *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007)).

Plaintiff also contends the DOT definition of assembler conflicts with the RFC limitation of the inability to sustain a high level of concentration such as sustained precision or attention to detail. Specifically, Plaintiff argues an assembler job has a reasoning level of two, which requires understanding and carrying out detailed instructions. However, the Eighth Circuit has held that an RFC for simple, routine, and repetitive work activity does not conflict with a reasoning level of 2. *See Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010) ("There is no direct conflict between 'carrying out simple job instructions' for 'simple, routine and repetitive work activity,' as in the hypothetical, and the vocational expert's identification of occupations involving [Level 2 reasoning]."). Here, the ALJ's RFC found that Plaintiff could sustain a simple routine or simple repetitive task. R. 17. The Court concludes that the ALJ did not err in relying on the VE's testimony.

Finally, Plaintiff argues the ALJ erred by not asking the vocational expert whether her testimony conflicted with the DOT. Since the Court has concluded no conflict exists, the ALJ's failure to inquire about conflicts was harmless error. *See Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) ("[T]he ALJ's error in failing to ask the vocational expert about possible conflicts between his testimony and the *Dictionary of Occupational Titles* was harmless, since no such conflict appears to exist.").

## IV. CONCLUSION

There is substantial evidence in the Record to support the ALJ's decision. The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: January 30, 2014    UNITED STATES DISTRICT COURT